CIVIL ACTION NO. 3:15-CV-00590-JHM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,          PLAINTIFF

V.

INDI'S FAST FOOD RESTAURANT, INC., and
EVANCZYK BROTHERS, LLC,          DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [DN 74] and Defendants' Motion for Partial Summary Judgment [DN 73]. Fully briefed, this matter is ripe for decision. For the following reasons, the Plaintiff's motion is **DENIED** and Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Prior to the institution of this action, Rickesha Jones filed a charge with the Equal Employment Opportunity Commission (the "EEOC" or "Plaintiff") alleging sexual harassment by her employer, Defendant Indi's Fast Food Restaurant, Inc. ("Indi's"). (Second Am. Comp. [DN 29] ¶ 8.) After Indi's refused to participate in conciliation with the EEOC, Plaintiff filed suit in this Court originally against Defendant Indi's alleging claims under Title VII of the Civil Rights Act of 1964. (Compl. [DN 1] ¶¶ 1–10.) Plaintiff filed a Second Amended Complaint [DN 29] adding Defendant Evanczyk Brothers, LLC ("Evanczyk Brothers") and asserting similar claims against both Defendants. (Second Am. Comp. [DN 29] at 1.) Plaintiff alleges that, beginning at the latest in 2011, Indi's "has engaged in unlawful employment practices at its Louisville, Kentucky restaurants in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1), by subjecting Jones and a class of similarly situated female employees to a

hostile work environment created by male managers." (Id. ¶ 14.) The male managers, while in positions of authority, allegedly subjected female employees to sexual touching, sexual comments, and requests for sexual favors. (Id. at ¶¶ 15–16.)

Plaintiff further states that Defendants knew or should have known about these unlawful employment practices that occurred on a frequent and routine basis. (Id. ¶ 17.) According to the Complaint, Jones and other similarly situated female employees complained about the hostile work environment to Indi's owner Thomas Murchison and still Defendants allowed the alleged harassment to persist. (Id. ¶¶ 17–18.) Plaintiff additionally alleges that this conduct deprived Jones and other similarly situated female employees of equal employment opportunities, adversely affected their status as employees, was intentional, and was done with malice or reckless indifference. (Id. ¶ 19.)

Plaintiff further alleges that Indi's Fast Food Restaurant, Inc. and Evanczyk Brothers, LLC "have operated as a single employer and/or integrated enterprise." (Id. ¶ 6.) On September 29, 2016, Defendants filed a joint Motion to Dismiss denying these contentions and maintaining that each operated distinct business entities and did not function as a single employer or integrated enterprise. (Mot. Dismiss [DN 35] ¶¶ 13–14.) This Court denied Defendants' Motion to Dismiss finding that Plaintiff had pled "plausible facts sufficient to support Plaintiff's 'single employer' or 'integrated enterprise' theory in order to survive Defendants' Motion to Dismiss." (Mem. Op. and Order [DN 56] at 8.)

On April 17, 2017, both Plaintiff and Defendants filed motions for partial summary judgment. Plaintiff moves for summary judgment on the following three issues: (1) that Defendants are liable for the sexual harassment of ten employees – Latasheeana "Tasha" Dyre, Ruqayya Abdullah, Lyneisha Taylor, Aaris Bell Humphreys, Danarra Yarbrough, Jacqulyn

Moore, Rickesha Jones, Sherice Franks, Melyssa Fox, and Denisha Glover; (2) that Defendants cannot avail themselves to the Ellerth/Faragher affirmative defense in defending against the claims of those same ten employees; and (3) that Indi's Fast Food Restaurant, Inc. and Evanczyk Brothers, LLC operate as an integrated enterprise. (Pl.'s Mot. for Partial Summ. J. [DN 74] at 1–2.) Defendants' motion requests that the Court grant summary judgment against the claims of eleven plaintiffs – Marietta Williams, Shannon Dalton, Tiffany Trice, Donita Wilson, Danarra Yarbrough, Aaris Bell Humphreys, Jewell Sowell, Cynthia Davis, Denisha Glover, Lyneisha Taylor, and Sherice Franks. (Def.'s Mot. for Partial Summ. J [DN 73] at 1–3.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not

establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

### A. Hostile Work Environment

**1. Applicable Law**

To prevail in a Title VII sexual harassment suit where there has been no adverse employment action, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment was so severe and pervasive that it created a hostile work environment; and (5) the employer is vicariously liable. Williams v. GMC, 187 F.3d 553, 560–61 (6th Cir. 1999).

The disagreement between the parties in this case surrounds the fourth element of a sexual harassment claim – whether the harassment experienced by plaintiffs was sufficiently severe and pervasive to create a hostile work environment. In deciding whether an environment is hostile or abusive, the Supreme Court instructs that courts should analyze the totality of the circumstances. Harris v. Forklift Sys., 510 U.S. 17, 23 (1993). A court should look at (1) the frequency of discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. Id. Further, there is both an objective and a subjective component of this analysis. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citing Harris, 510 U.S. at 21–22.) ("[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively objectionable, one that a reasonable

person would find hostile or abusive, and one that the victim in fact did perceive to be so.") And while the Court will view each plaintiff's claim individually, "courts need not myopically focus on only harassment directed at the individual plaintiffs, but may consider the harassment that each plaintiff experienced, witnessed, and knew about because all three could contribute to a hostile work environment." EEOC v. East Columbus Hosts, LLC, No. 2:14-CV-1696, 2016 WL 45947247, at *5 (S.D. Ohio Sept. 2, 2016) (citing Berryman v. SuperValu Holdings, Inc., 669 F.3d 714, 718 (6th Cir. 2012)).

Despite these guidelines, the analysis used in determining whether sexual harassment creates a hostile work environment remains rather difficult as there is no "mathematically precise test" to follow. Harris, 510 U.S. at 22. The Sixth Circuit has turned several decisions on whether the harassment was an "ongoing pattern of unwanted conduct and attention." Clark v. UPS, 400 F.3d 341, 352 (6th Cir. 2005).

The Court has also made clear that "verbal conduct alone can be the basis of a successful hostile work environment claim." Black v. Zaring Homes Inc., 104 F.3d 822, 826 (6th Cir. 1997). In Black, the Court deemed that sexually harassing comments made at bi-weekly meetings were "insufficient to support a finding that they were severe or pervasive enough to create an objectively hostile work environment." Id. Yet, in Abeita v. TransAmerica Mailings, Inc., a harassment claim based on verbal conduct did survive summary judgment since the sexually harassing comments were more "commonplace, ongoing, and continual" than the ones made in Black. 159 F.3d 246, 252 (6th Cir. 1998).

In other cases, a single incident can be so severe that it alone can be the basis for a hostile work environment claim, especially when the harassment involves a physical invasion. Hawkins v. Anheuser-Busch, Inc, 517 F.3d. 321, 334 ("This court has also made clear that harassment

involving an 'element of physical invasion' is more severe than harassing comments alone.") (citing <u>Williams</u>, 187 F.3d at 563). In <u>Ault</u>, a female employee was placing items in a walk-in cooler when her supervisor walked in and stood directly behind her so that she could feel his penis, trapping her in this position and remaining there despite the employee's request for him to remove himself. <u>Ault v. Oberlin Coll.</u>, 620 F. App'x 395, 401 (6th Cir. 2015). The Court denied summary judgment to the employer finding that a reasonable jury could conclude that this one incident was so severe that both objectively and subjectively for the plaintiff, it created a hostile work environment. <u>Id.</u> at 402.

In contrast, many cases eliminate claims of sexual harassment at the summary judgment stage. In <u>Burnett v. Tyco Corp.</u>, the Sixth Circuit determined that a female employee's sexual harassment claim was not severe despite a physical invasion. 203 F.3d 980, 984 (6th Cir. 2000). There, a manager made several sexual comments and placed a pack of cigarettes under the employee's tank top and bra strap. <u>Id.</u> at 981. Despite the physical invasion, the Court found that "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment." <u>Id.</u> at 985.

In this case, both parties bring motions asking the Court to grant partial summary judgment based on whether the sexual harassment experienced by the plaintiffs created a hostile work environment. In total, the EEOC's lawsuit alleges sixteen plaintiffs suffered harassment by Defendants. In its Motion for Partial Summary Judgment [DN 74], the EEOC asks this Court to grant judgment on ten of the plaintiffs. The Defendants ask the Court to enter summary judgment in its favor dismissing the claims of eleven of the plaintiffs.

**2. Summary Judgment Sought by EEOC**

The Court will first address the allegations of five women for whom only the EEOC claims it is entitled to summary judgment: Latasheena "Tasha" Dyre, Ruqayya Abdullah, Jacqulyn Moore, Rickesha Jones, and Melyssa Fox. According to the EEOC, these five plaintiffs' undisputed narrative of events "can establish a prima facie case of sexual harassment and the basis for employer liability." (Pl.'s Mot. for Partial Summ. J. [DN 74] at 2.) The Defendants respond by pointing to genuine issues of material fact which they claim makes summary judgment inappropriate. In analyzing the claims of these five women, all inferences will be drawn in favor of the Defendants in order to determine whether there are issues of fact and whether the EEOC is entitled to judgment as a matter of law.

Latasheena Dyre, Ruqayya Abdullah, Rickesha Jones, Melyssa Fox and Jacqulyn Moore allege that they were harassed by their supervisor Steve Bhoolai during the time they worked at the Indi's on Cane Run Road. (Dyre Decl. [DN 74-2] ¶¶ 3 & 5–6; Abdullah Decl. [DN 74-3] ¶¶ 2, 4 & 6; Jones Decl. [DN 74-8] ¶¶ 5–7; Fox Decl. [DN 74-10] ¶¶ 2–3 & 7; Moore Decl. [DN 74-7] ¶¶ 3, 5 & 6–10.) In both declarations and depositions, these women have shared testimonies that are unique but carry many common elements. All five reported that while working, Bhoolai would harass them by pressing his body against their buttocks as he passed so that they could feel his penis. (Dyre ¶14; Abdullah ¶ 10; Jones ¶ 14; Fox ¶ 9; Moore ¶ 9.) They each allege that Bhoolai would offer them money or favors in exchange for sex. (Dyre ¶ 12; Abdullah ¶ 22; Jones ¶ 16; Fox ¶ 13; Moore ¶ 7.) Several of them had encounters with Bhoolai in the walk-in freezer, where he touched them inappropriately or tried to kiss them. (Dyre ¶ 20; Abdullah ¶ 16; Jones ¶ 13; Fox ¶ 12.) Abdullah and Jones allege that Bhoolai also touched their breast. (Abdullah ¶ 11; Jones 15 & 24.) In front of Dyre and Abdullah, Bhoolai "picked up a raw

chicken leg from the kitchen and pretended to masturbate with it." (Dyre ¶ 11; Abdullah ¶ 8.) These are just some of the many instances of sexual harassment reported in the claimant's declarations and depositions.

Yet, the Defendants correctly state that summary judgment is inappropriate as there are issues of fact surrounding these women's claims. First, there are issues with credibility. While claimants present a united front in portraying Steve Bhoolai as a serial sexual harasser, Indi's management tells a different story. Margaret Sookal and Darren Sookal also managed the Cane Run Road Indi's and both testified that Steve treated employees with respect. (M. Sookal Dep. [DN 86-1] at 45–46; D. Sookal Dep. [DN 86-1] at 47.) Cane Run manager Janice Bhoolai said she had a "hard time believing" any sexual harassment charges because she never had "any indication that anything of this sort was happening." (J. Bhoolai Dep. [DN 86-4] at 56.) Further, Dyre, Abdullah, Jones, and Moore allege that they reported to the other managers that they were being sexual harassed by Steve Bhoolai. (Dyre ¶¶ 22–23; Abdullah ¶¶ 17 & 25; Jones ¶¶ 18–19; Moore ¶ 17.) Yet, with the exception of one incident reported to Darren Sookal by Abdullah, the Cane Run managers have testified that they were never aware anyone at their store was being sexually harassed.

Further, Defendants take issue with the testimony of the claimants found in the sworn declarations submitted by the EEOC. Defendants contend that these declarations present "irreconcilable differences" from the testimonies that claimants gave in depositions. (Def.'s Response [DN 86] at 23.) Defendants also suggest that several claimants may have had ulterior motives to fabricate stories and make the harassment they experienced seem more severe since Steve Bhoolai fired them. (Id. at 20 & 29.)

Lastly, a fact-finder is required to determine which of the incidents reported by claimants actually constituted sexual harassment and whether that harassment created a hostile work environment. For example, all five claimants report that Steve Bhoolai pressed against them so that they could feel his penis on their buttocks. Yet, testimony from the Defendants indicates that this contact may not have been intentional harassment but rather the natural consequences of a small workspace. (A. Bhoolai Dep. [DN 86-8] at 37.)

In order to determine what harassment claimants experienced and whether any harassment created a hostile work environment, the claims of Latasheena Dyre, Ruqayya Abdullah, Rickesha Jones, Jacqulyn Moore, and Melyssa Fox must be resolved by a jury. For this reason, summary judgment is denied.

### 3. Dismissal Sought by Defendants

Next, the Defendants seek summary judgment on behalf of six plaintiffs, claiming that they have not met their burden of proving harassment of the severity required for a hostile work environment claim. These plaintiffs are Donita Wilson, Jewell Sowell, Tiffany Trice, Shannon Dalton, Marietta Williams, and Cynthia Davis. In response, the EEOC argues that there are disputes of material fact in each of these claims. The Court will review the evidence in the light most favorable to each Plaintiff, and if it can be shown that no reasonable jury could find in favor of the Plaintiff, then summary judgment will be granted to the Defendants on those claims.

**Marietta Williams**

Marietta Williams was a first shift employee at the Broadway location of Indi's from December 2014 until April 2015. (Williams Decl. [DN 84-15] ¶¶ 2–3.) While she was there, Williams was supervised by Antoine Bhoolai, also known as "Mr. Ling." (Id. ¶ 4.) Williams alleges that Mr. Ling made sexist comments about her and her female co-workers. (Id. ¶ 5.) For

example, when she was late, Mr. Ling said to her, "Tell that young man to let you up for some air." (Id. ¶ 6.) On another occasion, Mr. Ling asked Williams and her co-worker, "Is that all you young ladies like to do -- lay down?" (Id. ¶ 7.) On payday, Williams alleges, "Mr. Ling would tell me and my female co-workers to call our boyfriends and tell them that we got paid. He told us to give our money to our boyfriends." (Id. ¶ 8.) As the Defendants are moving for summary judgment, this Court will assume that the allegations by the Williams are all true.

After considering the totality of the circumstances, the Court finds Mr. Ling's inappropriate comments do not give rise to a Title VII claim for sexual harassment. Rather, Mr. Ling's comments would fall into the category of harassment that "while distasteful and boorish, falls short of being sufficiently pervasive, hostile, or abusive to support a legal claim of a hostile work environment." Clark v. UPS, 400 F.3d 341, 351 (6th Cir. 2005) (internal punctuation omitted). The Supreme Court established in Faragher v. City of Boca Raton, that in order to ensure that Title VII "does not become a general civility code," the standard set forth should "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

Accordingly, Defendants are entitled to summary judgment as to the claims for harassment made by Marietta Williams.

**Cynthia Davis**

Cynthia Davis was another Broadway location employee. (Davis Decl. [DN 84-17] ¶ 2.) Her supervisors were Mr. Ling and Russel "Mr. Ben" Mohammed. (Id. ¶¶ 3–4.) Davis reports that throughout her employment, she was subjected to unwanted touching, comments, and propositions from her co-workers. (Id. ¶¶ 6–8 & 15–17.) According to Davis, she reported this

inappropriate behavior to both Mr. Ling and Mr. Ben. (Id. ¶¶ 9 & 19.)  Ling responded to some of her complaints by saying that he did not like working with women because he felt that all they do is "complain and nag." (Id. ¶ 11.)  Davis also reported that she was sexually harassed by Steve Bhoolai, who was not her supervisor but would occasionally come to her store as he supervised another Indi's location. (Davis Decl. [DN 84-17] ¶¶ 13–14.) Lastly, Davis testified that Mr. Ling got her Playboy Bunny perfume during a Secret Santa gift exchange. (Id. ¶ 10.)

Under Title VII, an employer's liability for sexual harassment depends on the status of the harasser. Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013). If a plaintiff can prove a hostile work environment was created by a direct supervisor, the employer is vicariously liable. Jackson v. Quanex Corp., 191 F.3d 647 (6th Cir. 1999) (citing Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998)). However, if the harassment is perpetrated by a mere co-worker, rather than a supervisor, the plaintiff must prove an additional element to establish employer liability. Title VII cases involving co-worker harassment require that the plaintiff show that her employer was negligent in controlling working conditions. Vance, 133 S. Ct. at 2439; Hafford v. Seidner, 183 F.3d 506, 513 (6th Cir. 1999) ("An employer is liable if it 'knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'").  A "supervisor" for sexual harassment claims is someone "empowered by the employer to take tangible employment actions against the victim." Vance, 133 S. Ct. at 2439.

The only supervisor harassment Davis alleges is Mr. Ling's misogynistic comment about not liking to work with females because they "complain and nag" and the Playboy Bunny perfume gift. These events are not severe enough to create a hostile work environment. In addition, Davis alleges she was harassed by Bhoolai, a supervisor at the Cane Run store. However, because Bhoolai did not have authority to take tangible employment action against

Davis since he supervised a different location, for the purposes of this analysis, Bhoolai will be considered a mere co-worker.

Because the vast majority of the harassment Davis suffered was perpetrated by her co-workers, Davis must prove that Defendants knew or should have known that she was being harassed and acted negligently in correcting the issue. In this case, if the allegations by Davis are true, she reported multiple incidents of harassment to her managers. Yet, Mr. Ling denies that Davis or any of her co-workers ever complained to him about the co-workers being inappropriate. (A. Bhoolai Dep. [DN 86-6] at 41.) Mr. Ben was asked specifically about complaints by Davis and testified that she had never reported any inappropriate touching. (Mohammed Dep. [DN 86-5] at 27.) Thus, there are genuine issues of material fact regarding whether Indi's management was aware of any alleged sexual harassment and therefore, Defendants are not entitled to summary judgment on the claims of co-worker harassment made by Cynthia Davis.

**Donita Wilson, Tiffany Trice, Shannon Dalton, and Jewell Sowell**

Donita Wilson, Tiffany Trice, Shannon Dalton, and Jewell Sowell all allege that they were sexually harassed by Shaun Sookal. (Wilson Decl. [DN 84-7] ¶¶ 12–15; Trice Decl. [DN 84-11] ¶¶ 5–6 & 8; Dalton Decl. [DN 84-13] ¶ 10; Sowell Decl. [DN84-9] ¶¶ 3 & 5.)

Defendants are not entitled to summary judgment for the sexual harassment of these claimants because the core facts of their complaints are in dispute. Shaun Sookal denies that he ever touched, kissed, or propositioned any of the women that worked for him. (S. Sookal Dep. [DN 86-7] at 90.) In this type of "he said, she said" situation, it is the responsibility of a fact-finder to determine what events occurred. For this reason, Defendant's motion for summary judgment in regards to these claimants is denied.

**4. Summary Judgment Sought by Both Parties**

Lastly, with respect to five plaintiffs: Aaris Bell Humphreys, Denisha Glover, Sherice Franks, Lyneisha Taylor, and Danarra Yarbrough, both parties seek summary judgment. Therefore, the Court will, while considering the allegations in a light most favorable to the non-moving party, determine whether either party is entitled to judgment as a matter of law.

All five claimants in this category allege that they were subjected to sexual harassment by their manager, Steve Bhoolai, while working at the Indi's on Cane Run Road. (Bell Decl. [DN 74-5] ¶ 3; Glover Decl. [DN 74-11] ¶¶ 3–4 & 6; Franks Decl. [DN 74-9] ¶¶ 3–4 & 7; Taylor Decl. [74-4] ¶¶ 3–5; Yarbrough Decl. [DN 74-6] ¶¶ 2 & 6.) Their claims are similar to the other claimants who worked at the Indi's on Cane Run Road, alleging that they were subjected to unwanted touching, comments, and advances by Bhoolai.

Overall, none of these plaintiffs have claims that strongly favor one party or the other. Each woman has shared a story of harassment that a jury may or may not find severe and pervasive, as the analysis for finding a hostile work environment is not a mathematically precise test. Further, the stories of harassment told by the plaintiffs are discredited by managers for the Defendants who claim that they were not aware any of these claimants were harassed. These considerations, along with the reliability and subjective experiences of the claimants, are best left to a fact finder. Therefore, finding that a reasonable jury could find for either the Plaintiff or for the Defendants, summary judgment for either party on these claims inappropriate.

## B. Faragher/Ellerth Defense

The EEOC also asks the Court to grant summary judgment in its favor on the issue of Defendants availing themselves to the affirmative defense set forth in Burlington Indus. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998). In those

cases, the Supreme Court held that an employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate authority over the employee. Ellerth, 524 U.S. at 765. However, when no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, consisting of two elements: (1) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Id.

**1. Pleading the Faragher/Ellerth Affirmative Defense**

In its motion for summary judgment, the EEOC argues that Defendants cannot use the Faragher/Ellerth affirmative defense because it was not pled in violation of Federal Rule of Civil Procedure 8(c). (Pl.'s Mot. for Partial. Summ. J. [DN 74] at 47.) The Court disagrees with this assertion. Although Defendants did not plead the affirmative defense by citing specifically to Faragher or Ellerth, the EEOC was put on notice that Defendants intended to use such an affirmative defense. "The Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir. 1993) (citing Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 350 (1971)). Given that in its Motion for Partial Summary Judgment, the EEOC has attempted to preclude Defendants from using the Faragher/Ellerth defense, the Court is satisfied that the EEOC was given sufficient notice of the Defendants' intent.

Indi's Answer states that in the event that its employees were subject to unlawful discrimination, "none of these employees ever gave sufficient notice to Murchison Thomas, the

owner of Defendant, Indi's, or Alex Evanczyk, Indi's Human Resources Manager, pursuant to the requirements of the Defendant, Indi's, Employee Handbook and are thus barred from recovery." (Indi's Answer [DN 71] ¶ 7.) The Evanczyk Brother's Answer contains similar language, purporting that complaints should have been directed to company owner Alex Evanczyk. (Evanczyk Brothers Answer [DN 58] at 2.) The Court is satisfied that these assertions are Defendants' attempts to invoke both prongs of the Faragher/Ellerth affirmative defense.

## 2. Defendant's Reasonable Care

Alternatively, if the Court concludes the Faragher/Ellerth affirmative defense was not waived, the Plaintiff argues that it is entitled to summary judgment because the Defendants cannot satisfy the first prong of the defense which often includes the requirement that an employer have some sort of sexual harassment policy in place. Clark, 400 F. 3d at 349. Yet, it also goes beyond an employer simply having a sexual harassment policy. "Prong one of the affirmative defense requires an inquiry that looks behind the face of a policy to determine whether the policy was effective in practice in reasonably preventing and correcting any harassing behavior." Id. According to the Sixth Circuit, a "reasonable" sexual harassment policy should (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy. Id. at 349–50.

Defendants admit that Indi's did not have a sexual harassment policy until July 2014 when a Department of Labor investigation revealed that there was no working employee handbook. (Evanczyk Dep. [DN 86-8] at 33.) In July 2014, Alex Evanczyk alleges that handbooks were disseminated to all Indi's locations. (Id. at 42.) These handbooks contained a

section on sexual harassment describing what behavior constitutes harassment and stating that harassment "should be reported to the appropriate supervisory personnel." (Employee Handbook [DN 74-21] at 1.) The handbook further instructed that any employee who experienced job-related harassment should relay their complaints to management. (Id. at 2.) However, if employees preferred not to discuss concerns with their immediate supervisors, the handbook's Open Door Policy also stated that they could contact Alex Evanczyk. (Id.)

The Plaintiffs also maintain that the Defendants will not be able to meet the second prong of the Faragher/Ellerth affirmative defense which requires that a defending employer prove that a claimant unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Obviously, the defense is not available with respect to those claims of harassment which occurred prior to the implementation of the policy in July, 2014. With respect to the viability of the defense after the implementation of the policy, the Court is reluctant to summarily prohibit it at this time. The Court believes the better approach is to hear all the evidence related to the implementation of the policy and its effectiveness, and then decide how to instruct the jury on it.

### C. Integrated Enterprise

Lastly, the EEOC requests summary judgment to determine that Defendants, Indi's Fast Food Restaurant, Inc. and Evanczyk Brothers, LLC, "have operated as a single employer and/or integrated enterprise." (Second Am. Compl. ¶ 6.)

This Court previously addressed this issue when it decided that the EEOC "pled plausible facts sufficient to support Plaintiff's 'single employer' or 'integrated enterprise' theory in order to survive Defendant's Motion to Dismiss." (Mem. Op. and Order [DN 56] at 8.) The EEOC now attempts to win summary judgment on this issue under the same facts that the Court considered

previously. Namely, that Evanczyk Brothers operates a restaurant using Indi's name and advertising logo without a formal agreement, Alex Evanczyk manages both companies, and the companies' handbooks use similar language.

Like before, the Court will make a determination of whether Indi's and Evanczyk Brothers are an integrated enterprise using the following factors: "(1) interrelation of operations, i.e. common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." Swallows, 128 F.3d at 993 (citing York v. Tennessee Crushed Stone Ass'n, 684 F.2d 360, 362 (6th Cir. 1982)).

While acknowledging that Indi's and Evanczyk Brothers share a common manager and a similar business model, the Court finds that a reasonable jury could conclude that the Defendants did not operate an integrated enterprise. Although Murchison Thomas set up Evanczyk Brothers for the benefit of his grandsons, the two businesses now operate under different owners using separate accounts. Consequently, the Court cannot deem Indi's and Evanczyk Brothers to be an integrated enterprise as a matter of law and summary judgment must be denied.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED.** The Defendant's Motion for Summary Judgment is **GRANTED** as to harassment claims of Marietta Williams and **DENIED** as to all other claims.

Joseph H. McKinley

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 26, 2017

cc: counsel of record

17